# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

DIOP KAMAU a/k/a DON  
JACKSON doing business as  
THE POLICE COMPLAINT CENTER, INC.,  
a Florida corporation, and as member of  
POLICE COMPLAINT CENTER, an  
unincorporated association,  
     Plaintiff,

Case No.: 4:21-cv-00279-MW-MJF

vs.

GREGORY A. SLATE,

     Defendant.  
_____/

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR DETERMINATION OF ENTITLEMENT TO ATTORNEY'S FEES

COMES NOW, Plaintiff DIOP KAMAU aka DON JACKSON doing business as THE POLICE COMPLAINT CENTER, a sole proprietorship f/k/a POLICE COMPLAINT CENTER, INC., a Florida corporation, and as a member of POLICE COMPLAINT CENTER, an unincorporated association ("Plaintiff"), who hereby responds in opposition to Gregory A. Slate's Motion for Determination of Entitlement to Attorney's Fees [ECF No. 47] (the "Motion"), and in support states as follows:

## **INTRODUCTION**

Defendant Gregory Slate, a vexatious litigant[1] with a long and nefarious history of abuse of judicial process[2], arrests[3], convictions[4], disbarment[5], and other outrageous

---

[1] *See* April 24, 2013 Order [ECF No. 103] in *Slate v. ABC News et al,* (Dist. DC Case No. 1:09-cv-01761-BAH) Attached hereto as **Exhibit A**, where Judge Howell describes, *inter-alia,* Slate's fabrication of evidence and other litigation abuses (pp. 32-39). This Opinion also details the partial source of the animus between Plaintiff and Defendant in the instant litigation. *See* references to Mr. Kamau throughout the Order and at pp. 29-30.
[2] *See Id.*
[3] While evasive and deliberately obtuse throughout his deposition, Slate did concede certain facts regarding his arrests, convictions and disbarments. *See* excerpts of January 16, 2023 Deposition of Gregory Slate, attached hereto as **Exhibit B**, at pp. 45-46.
[4] *See Id.* at pp. 50-51.
[5] See *Id.* at p. 41.

conduct (including allegedly delivering an excrement-filled box to a law firm)[6], has brought a scattershot Motion for Determination of Entitlement to Fees, filled with hyperbole and half-truths that clearly falls well short of the extremely high-bar required to sanction an attorney under 28 U.S.C. § 1927, as described below.

In short, Defendant's Motion must be denied[7]. This Court's inherent power to sanction counsel pursuant to 28 U.S.C. § 1927 is reserved only for attorneys who "willfully abuse the judicial process by conduct tantamount to bad faith." *Malautea v. Suzuki Motor Co., Ltd.,* 987 F.2d 1536, 1544 (11th Cir.1993) (*quoting Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir.1991)). "Under § 1927… the party moving for sanctions **must show objective bad faith**. Usually, this means an attorney acted 'knowingly or recklessly.'" *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020) (emphasis added, internal citation omitted). There is simply nothing in the record or on the docket that evidences sanctionable conduct or anything that remotely approaches the line that must be crossed for this Court to contemplate invoking its powers to sanction Plaintiff's counsel. Slate's view that Kamau didn't produce a

---

[6] *See* Declaration of Nathan E. Siegel at ¶ 21 (filed as ECF. No. 29-2 in *Slate v. ABC News et al*), attached hereto as **Exhibit C**.

[7] In light of, *inter-alia,* the strict requirements under § 1927, Plaintiff believes that Slate's Motion is arguably sanctionable itself in that it is meritless, however Kamau merely opposes Slate's motion herein and is not moving for sanctions against Slate in order to conserve judicial resources and not burden this Court.

sufficient amount of documents in discovery in no way even remotely approaches "objective bad faith" on the part of Kamau's counsel.

## **RELEVANT FACTUAL AND PROCEDURAL HISTORY**

Admittedly, the parties here have a long and acrimonious personal history and litigation history. Judge Howell's Order, reference above and attached as Exhibit A, alludes to this. Despite this acrimony, Plaintiff and Plaintiff's counsel's actions within this litigation have been reasonable, cooperative, and anything but sanctionable.

**Kamau's Response to Slate's Facts and Procedural History**

**1.    Current Procedural Posture.**

On May 9, 2022 Slate filed a Motion to Dismiss and Alternatively to Strike Plaintiff's Second Amended Complaint as a sham pleading. This Motion also included a procedurally improper attempt to sanction Plaintiff under Rule 11. On January 17, 2023 this Court issued an Order, granting Slate's Motion to Dismiss, without prejudice. This Court also denied Slate's Motion to Strike. However, this Court discussed the merits of Slate's Motion for Sanctions and was clearly not at all persuaded and denied same. The crux of Slate's Motion was that Kamau's allegation that certain relevant documents such as the executed employment contract were lost to cyberattack, was an "evidentiary end-around", and this Court

found that argument to be unpersuasive. *See* Jan. 17, 2023 Order [ECF No. 43] at pp. 20-21. Slate now brings the same unpersuasive arguments to the Court yet asks for an even harsher sanction.

Slate goes on to repeatedly argue in his Motion that essentially because Mr. Kamau, who alleges that Slate deleted his electronic files, was unable to produce enough documents (in Slate's view) to properly support his claims, that his Counsel, who voluntarily dismissed a suit that had been dismissed without prejudice, somehow "multiplied" the proceedings so much so that extremely harsh sanctions directly against Kamau's attorney should be imposed. This argument ignores three critical and salient points: Firstly, Slate's argument that not enough "documents" were produced ignores the nature of the allegations themselves, which allege deletion and lost files. Secondly, this type of evidentiary shortfall, even if true, which it isn't, does not approach the sort of conduct that is sanctioned by Courts of the 11th circuit under 28 U.S.C. § 1927. And finally, Slate completely ignores the fact that Kamau offered up his hacked/destroyed computer on numerous occasions as evidence for Slate's review, and Slate never once expressed any interest in actually inspecting said device.

### 2.   Slate's Scattershot Recitation of Grievances from Other Litigation, Not Involving Kamau's Current Attorneys, is Irrelevant.

Slate uses the first 12 Paragraphs of his motion to articulate a scattershot recitation of his grievances against Plaintiff, none of which have anything to do with undersigned counsel, who played no part in those prior litigations.

### Discovery in the Instant Matter

Firstly, Slate repeatedly claims in his Motion that "Kamau never located a single 'response, non-privileged document' prior to filing this case or in the 16 months it was pending prior to discovery becoming due". *See* Motion at p. 12. *This is a red-herring and is categorically false* and is apparently intended to mislead this Court in a desperate attempt to fabricate a basis for a fees award under 28 U.S.C. § 1927.

As the Court can see, Exhibit A to Slate's Motion is a response to an email where counsel for Plaintiff simply states *he* does not have documents *ready to produce that day*. Slate takes this statement out of context and then somehow concludes that "Kamau never located a single [relevant document] prior to filing this case…". *See* Motion at p. 12. At the time, Plaintiff's counsel was in the process of gathering and reviewing documents in order to prepare them for production, in response to Defendant's discovery requests.

And even if this were true, to remind, this is a case where Plaintiff alleges that Defendant hacked and *deleted* Plaintiff's electronic files. *See* Second Amended Complaint [ECF No. 23] at ¶¶ 43-45 and 66. Thus, even if it were true that Kamau didn't have any relevant documents at the time the Complaint was filed, the Complaint itself alleges a plausible explanation for this— *Defendant hacked Plaintiff's files and deleted them*. Further, Plaintiff did in fact produce hundreds of pages of relevant documents and electronic files in this matter which Plaintiff did intend to use as evidence to support its claims in this case[8]. Moreover, one of the actual electronic devices that Plaintiff believes was hacked and essentially destroyed by Defendant, Plaintiff's Dell desktop Computer, was in fact offered for inspection to Slate's counsel[9], as soon as it was located by Plaintiff. Tellingly, Slate's counsel *never expressed any interest in inspecting the computer* and has instead decided to pretend that Plaintiff never had any evidence to back-up his allegations in this matter, which simply isn't true.

Slate claims that because the Second Amended Complaint implied that Slate had "sophisticated hacking abilities" that results in "serious questions" about the

---

[8] *See* composite **Exhibit D,** December 14, 2022 and January 13, 2023 Emails from Plaintiff's attorney serving links to document productions in this matter.
[9] See **Exhibit E,** January 6, 2023 Email from Plaintiff's attorney to Slate's Counsel offering the Dell computer for inspection.

7

"credibility and reliability of Kamau's allegations". However, the alleged existence of "serious [fact] questions [regarding the allegations]" do not remotely approach the standard for sanctioning counsel. *See* Motion at p. 13. Slate goes on to offer 5 bullet points that he deems "paranoid delusions" and then oddly declares that "[t]hese admissions by Plaintiff's counsel should be enough to award Mr. Slate his fees". *See* Motion at p. 14. Once again, even on its face, the *allegations* that Slate points to do not remotely approach the standard for sanctioning counsel here. Pretending that allegations of the Defendant using the internet to hack another computer and delete files is necessarily a "bizarre narrative" that must be the result of "paranoid delusions" does not substitute for actual sanctionable conduct by counsel. Slate's hyperbole speaks to his desperation, not any objective bad faith by Kamau's Counsel.

After a long, scattershot recitation of seemingly random counterarguments about other cases and criminal investigations that Kamau's Counsel had nothing to do with, Mr. Slate finally explains on page 28 of his 31-page motion why he believes Kamau's counsel should be subjected to § 1927 sanctions:

> Here, Plaintiff's counsel, who was already representing parties in a related U.S. District Court case, decided, for reasons unknown even to his co-defendants' counsel, to file a frivolous complaint in another court, creating an entirely separate case, thereby necessitating

8

> duplicative discovery, including Mr. Slate's deposition that will be conducted twice, unreasonably and vexatiously multiplied proceedings.

*See* Motion at p. 28.

Slate bizarrely cites an unnamed "co-defendants' counsel['s]" unawareness as to Plaintiff's litigation strategy as a basis for sanctioning Kamau's Counsel here. This is not persuasive, nor does it have any nexus with the applicable standards for § 1927 sanctions. Slate also points to a Michigan District Court holding regarding "failing to voluntarily dismiss" a case, which stands in stark contrast to the instant matter *where Kamau did voluntarily dismiss this case*.

Slate also complains at p. 28 that somehow Kamau's Counsel's conduct "necessitate[ed] duplicative discovery". But Slate's counsel's own words contradict this. *See* December 2022 email chain attached as **Exhibit F**. This email chain shows some of the back and forth that Slate's counsel created when Kamau's counsel was simply trying to arrange depositions over Zoom, a reasonable objective, pursued in order to save time and resources amongst the parties. *See Id.* Further, as the Court can see, Counsel for Slate respond's to Kamau's counsel's overtures regarding consolidating discovery with this: "we'll still have to see how things play out to determine whether it would make sense to consolidate the matters/depositions." *See Id.* at p. 6. Yet, just five weeks after writing this to Kamau's Counsel in the *Slate v.*

*Kamau* et al matter, Slate's attorney has come to this Court and brazenly declared that because Slate may have to be deposed twice, each in a different litigation, that Kamau's Counsel in this litigation has somehow "necessitate[d] duplicative discovery".[10]

### Slate's Scattershot and Misleading Recitation of Facts Don't Tell the Whole Story of This Case

Slate repeated attempts to mislead this Court regarding Plaintiff's *modus operandi* in this matter is well-shown by Slate's characterization of his deposition. Slate claims that his Deposition was "focused largely on irrelevant matters" and then gives the court a single example "e.g., with whom Mr. Slate has sex and where". The reality is, the referenced passage (which encapsulates approx. two pages of a 236-page transcript), was intended to garner information on a wifi-network belonging to Slate's former girlfriend that Plaintiff believes Slate used to improperly access Plaintiff's computer systems, and the questioning regarding this reflects as such. In fact, after Plaintiff's counsel politely asked about romantic relations with

---

[10] Kamau's counsel then follows up again, simply trying to get confirmation as to what Slate's position was regarding Zoom depositions, to which Slate's counsel replies rudely: "What on earth are you talking about? Did that logically make sense to you before you decided to type?". *See Id.* at p. 1. This fits with Slate's counsel's typically long-winded and insulting replies to Kamau's counsel's reasonable questions or requests.

the woman, it was *Slate* that (after giving a typical evasive, obtuse response, a style he employed throughout his deposition and throughout this litigation), asked bluntly: "You're asking me if I've had sex with her? Is that the question?"  *See* Exhibit B, excerpts of the Deposition of Gregory Slate at pp. 214-216. As the Court can see, Counsel is attempting to do his job in asking Slate about his connection to the woman associated with an IP Address Plaintiff believed was used to hack his system. Of all the passages in Slate's deposition, this is the only one that Slate has brought to this Court's attention, and it again doesn't show anything resembling objective bad faith by counsel or multiplying the proceeding, instead it shows a simple question that is met with an intentionally obtuse and verbose answer.

In sum, Slate simply never connects the dots between anything Counsel for Kamau actually did within this litigation, and any case law stating that particular sort of conduct is sanctionable under 28 U.S.C. §1927.  Slate does identify a 37-year-old District Court case out of Colorado for the proposition that attorneys are compelled to "make reasonable inquiry into both the law and the facts surrounding their clients' disputes prior to initiating a lawsuit."  *Colorado Chiropractic Counsel v. Porter Memorial Hospital*, 650 F. Supp. 231, 239 (D.C. Co. 1986).  This was a case about Chiropractors who sued hospitals for denial of staff privileges in violation of antitrust laws, but in reality, they had never actually applied for staff privileges thus

their suit was entirely without merit and predicated on a threshold issue that was objectively false. *Id.* This sort of facially flawed complaint was apparently sanctionable under 10th Circuit precedent at that time and regardless has no bearing on (or similarity to) the instant facts or procedural history here.

Moreover, Slate cites a slew of 20-30+ year-old 11th Circuit cases in order to define sanctionable conduct under § 1927, while ignoring much of the recent precedent that further defines the sort of grossly unreasonable conduct that results in sanctions to counsel under § 1927. This is likely because much of the recent precedent makes clear that the sort of reasonable conduct that Kamau's attorneys employed in this action in no way rises to the level necessary to impose sanctions on counsel under § 1927.

## **LEGAL STANDARD & ARGUMENT**

In order for this Court to impose sanctions under 28 U.S.C. §1927, three factors must be met:

> First, the attorney must engage in "unreasonable and vexatious" conduct. Second, that "unreasonable and vexatious" conduct must be conduct that "multiplies the proceedings." Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings, i.e., the sanction may not exceed the "costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

> We have consistently held that an attorney multiplies proceedings "unreasonably and vexatiously" within the meaning of the statute only

> when the attorney's conduct is so egregious that it is "tantamount to bad faith." *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir.1991); see also *Schwartz v. Millon Air, Inc.,* 341 F.3d 1220, 1225 (11th Cir.2003) (" 'Bad faith' is the touchstone.").

*Amlong & Amlong, P.A. v. Denny's, Inc.,* 500 F.3d 1230, 1239 (11th Cir. 2007).

The 11th Circuit goes on to make clear: "the attorney's objective conduct is the focus of the analysis, the attorney's subjective state of mind is frequently an important piece of the calculus…negligent conduct, standing alone, will not support a finding of bad faith under § 1927—that is, *an attorney's conduct will not warrant sanctions if it simply fails to meet the standard of conduct expected from a reasonable attorney*" See *Amlong* at 1241–42 (11th Cir. 2007) (emphasis added).

> The statute imposes a "high standard" that requires the moving party to show that the other side engaged in behavior that "grossly deviates from reasonable conduct." But although the standard is objective, the moving party may still rely on evidence of subjective bad faith to make this showing. That's because an act done in subjective bad faith is also more likely to be objectively unreasonable.

*Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020) (quoting *Amlong*, internal quotations and citations omitted).

The *Irish* case is instructive from an evidentiary analysis perspective as well.

In *Hyde v. Irish*, the 11th Circuit looked at a party that argued they had direct documentary evidence that the non-moving party filed a meritless Complaint, and

13

reasoned that when viewed in a different light, the Complaint was not sanctionable. Whereas here, the allegations themselves explain the lack of a voluminous document production. A review of this Court's Order granting Slate's Motion to Dismiss in conjunction with the procedural record here, shows that the first two factors described in *Amlong* simply aren't present here. And even if this Court were to conclude that the first factor is present here, with regards to the filing of the Complaint itself, *the scattershot Motion never articulates how Counsel for Kamau in any way "multiplie[d] the proceedings."*.

Moreover, *nothing in the record nor the Motion shows that Kamau's Counsel here "grossly deviated" from reasonable conduct*. Based on the above caselaw, even if a "reasonable attorney" had looked at the facts alleged in this case, where Mr. Kamau claims he was hacked and lost extensive electronic data, and said attorney concluded because Mr. Kamau did not have thousands of documents to produce to somehow show that his data had been hacked and deleted and as such that this litigation shouldn't have been filed, it does not remotely approach the level of objective bad faith necessary to sanction Counsel for Kamau under § 1927.

**Slate's Motion for Sanctions Lacks Merit Under the Applicable Standard**

Throughout Slate's 30 pages of miscellaneous grievances, much of which has nothing to do with undersigned Counsel, we never find out what Kamau's Counsel

actually did that is "tantamount to bad faith" or any showing of conduct demonstrating objective bad faith. Apparently, Slate feels that alleged victims of hacking should have to produce voluminous files that they allege were hacked and deleted, and if they don't, their attorneys should be sanctioned. This is nonsensical and unpersuasive. Especially in light of Kamau's unanswered offering of his destroyed computer for inspection.

Tellingly, we never hear exactly what Kamau's counsel actually did to so unreasonably multiply this litigation after filing it— *litigation that Kamau himself dismissed voluntarily when this Court's Order specifically allowed for Plaintiff to file an amended Complaint on or before January 30, 2023.* Now, Defendant seeks to sanction Plaintiff's Counsel after voluntarily dismissing this action at the request of his client, *which is the opposite of unnecessarily multiplying litigation*.

### According to this Court and Slate's Counsel, *Slate Himself Unnecessarily Multiplied the Proceedings*

On the contrary, the record shows Kamau's counsel conducting the litigation quite reasonably. For example, when this Court denied Slate's unjustified Motion to Compel in the *Slate v. Kamau et al* matter (NDFL No. 4:21-cv-00390), and imposed sanctions on Slate for his unnecessary Motion, Counsel for Mr. Kamau proactively reached out to Slate's Counsel and engaged in a dialogue politely

15

requesting that Slate withdraw his Motion. *See* **Exhibit G**. Then subsequently, Slate withdrew his Motion to Compel in the instant litigation at ECF No. 40 (conceding a "substantially similar motion to compel" had been filed in the instant matter). Thus, Slate's counsel *conceded that he himself unnecessarily multiplied this litigation* through his unnecessary Motion to Compel that he withdrew after being sanctioned by this Court in *Slate v. Kamau et al* for filing a nearly identical Motion.

Objectively, the record is filled with many instances of Kamau's counsel acting reasonably, and no discernable objective bad faith that multiplied this litigation unnecessarily.

## REQUEST FOR EVIDENTIARY HEARING

Should this Court determine that Slate's Motion has merit, Counsel for Mr. Kamau hereby requests an evidentiary hearing on this matter.

## CONCLUSION

Slate's Motion does not even truly allege the sort of conduct that Courts find sanctionable under 28 U.S.C. § 1927. And in light of the applicable standard, it's clear Kamau's counsel did nothing to warrant this harsh sanction in the instant litigation. Accordingly, Slate's Motion should be denied in its entirety.

Dated: February 13, 2023

**SOUTH FLORIDA LAW, PLLC**
1920 E. Hallandale Beach Blvd.
Hallandale Beach, FL 33009
Direct: (917) 442-4085
Office: (954) 900-8885

By: /s/ *Frank DelloRusso*
FRANK DELLORUSSO
Florida Bar No. 111949
fdellorusso@southfloridalawpllc.com
MICHAEL J. RUTLEDGE
Florida Bar No. 1025657
mrutledge@southfloridalawpllc.com
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on February 13, 2023, I filed the foregoing document with the Northern District of Florida's CM/ECF system, which has caused email service to be made upon all counsel of record.   */s/ Michael J. Rutledge*

## CERTIFICATE RE: L.R. 7.1 (F)

**I HEREBY CERTIFY** that the foregoing Memorandum in Opposition contains 3,534 words.   */s/ Michael J. Rutledge*