# **EXHIBIT B**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION
CASE NO.: 4:21-cv-00279-MW-MJF


DIOP KAMAU,
an individual,


    Plaintiff,
vs.

GREGORY SLATE,
an individual,


    Defendant.
_____/



      Via Zoom
      January 16, 2023
      12:23 p.m.



_____
THE DEPOSITION OF

GREGORY SLATE


_____
Taken on Behalf of the Plaintiff
Pursuant to Notice of Taking Deposition
Commencing at 12:23 p.m.

Diop Kamau v. Gregory Slate

January 16, 2023                                                    Gregory Slate

2

```
 1   APPEARANCES:

 2
     On behalf of Plaintiff:
 3
     SOUTH FLORIDA LAW, PLLC
 4   1920 E. Hallandale Beach Boulevard, Suite 702
     Hallandale Beach, FL 33009
 5   mrutledge@southfloridalawpllc.com
     BY:  MICHAEL J. RUTLEDGE, ESQ.
 6

 7   On behalf of Defendant:

 8   BELLWETHER LAW, PLLC
     1 Alhambra Plz, Suite PH
 9   Coral Gables, FL 33134
     janakan@bellwetherlaw.com
10   BY:  JANAKAN THIAGARAJAH, ESQ.

11

12   ALSO PRESENT:

13   DIOP KAMAU

14   REPORTED BY:

15   KELLY A. PRICE
     ALPHA & OMEGA REPORTING SERVICES, INC.
16   1215 SE 2nd Avenue, First Floor
     Ft. Lauderdale, FL 33316
17   954.523.6422

18                    * * * * *

19                  STIPULATIONS

20        It is stipulated and agreed by and between

21     counsel for the respective parties that:

22          Reading and subscription of the deposition

23     by the witness are not waived.

24

25
```

Diop Kamau v. Gregory Slate

January 16, 2023                                        Gregory Slate

40

1          A.    Maryland.

2          Q.    Okay.  And are you currently licensed to

3    practice law in the State of Maryland?

4          A.    No.

5          Q.    Okay.  So there was a period of time where you

6    were licensed to practice law in the State of Maryland;

7    is that correct?

8          A.    Yes.

9          Q.    What year would -- what year were you first

10   licensed to practice law in the State of Maryland?

11         A.    I think it was 2015.

12         Q.    Okay.  I think you testified earlier that you

13   graduated law school in 2014; is that correct?

14         A.    That's what I remember, yeah.

15         Q.    Okay.  And so, it was on or about 2015 where

16   you became licensed to practice law in the State of

17   Maryland?

18         A.    I mean, my recollection is, like, you graduate

19   in, like, what, May?  And then, you're studying.  You're

20   taking the bar in, what, July?  And then, you -- you

21   know, you get the results, and then, you finish up the

22   process.  And -- and I think in Maryland, you get sworn

23   in -- it might have been December 2014, but for some

24   reason I think it was 2015.

25         Q.    Okay.  And then, at some point in time, did

Diop Kamau v. Gregory Slate

January 16, 2023                                                    Gregory Slate

41

1    you no longer have a license to practice law in the

2    State of Maryland?

3            A.    Yeah.

4            Q.    Okay.    And what were the circumstances

5    regarding you becoming unlicensed to practice law in the

6    State of Maryland?

7            A.    I was disbarred.

8            Q.    What were the circumstances of your disbarment

9    in the State of Maryland?

10           A.    The circumstances?  I mean, I don't want to

11   interpret legal -- like I said, I don't want to get into

12   interpreting legal opinions, or legal, you know, court

13   positions, and things like that.  I mean, I'm telling

14   you, I'm disbarred.

15           Q.    So would it be fair to say that at some point

16   in time the authorities who determine who is and isn't

17   licensed to practice law in the State of Maryland

18   decided that you should no longer have that privilege of

19   practicing law in the State of Maryland?

20           A.    I think that's a fair description of

21   disbarment.

22           Q.    Okay.  And do you recall any of the reasons

23   that the State of Maryland bar authorities used for

24   justifying their determination that you were no longer

25   eligible -- or should no longer be eligible to practice

Diop Kamau v. Gregory Slate

January 16, 2023                                    Gregory Slate

45

1        A.    2018.

2        Q.    Okay.  And then, just -- still sort of this

3   background items.  As far as your history with the

4   police, personally have you ever been arrested?

5        A.    Yes.

6        Q.    How many times have you been arrested?

7        A.    Like arrested and charged, or detained, or --

8        Q.    Arrested where they, you know, read you your

9   Miranda rights and you were not free to leave, I guess,

10  I would say.

11       A.    You wanna go with like arrest?

12       Q.    Why don't we say detained.  How many sort of

13  separate incidents -- or, you know, not -- put it this

14  way, if you were detained by the police, and then, you

15  were read your rights, and officially arrested, I would

16  count that as one time.

17            But let's sort of talk about it more broadly.

18  For example, one time in college, when I was leaving a

19  party, the cops kind of all stopped us and said we

20  wouldn't go anywhere and they wanted to ask us some

21  questions.  So I don't consider that detained, because

22  it was -- we were just being asked questions, and then,

23  we proceeded to walk down the street.

24            So have you ever been detained by the police

25  where you were, perhaps, placed in a squad car, or taken

Diop Kamau v. Gregory Slate

January 16, 2023                                              Gregory Slate

46

1    to a jail, or taken to a police headquarters, or

2    something of that nature?

3         A.   Yes.   I couldn't tell you how many times.   I

4    mean, I would -- I would go -- like, to me, detention is

5    if I get pulled over.   If I can't move, you know, then

6    I'm detained.   So if that's what we're asking, like I

7    have more times than I could count, that I can recall.

8    I mean, it would take a very --

9         Q.   So have you ever been cited or charged with a

10   infraction related to the consumption of alcohol while

11   operating a motor vehicle?

12        A.   Yes.

13        Q.   Okay.

14        A.   Well, not consumption while, but sure.

15        Q.   Or being the under the influence of an

16   alcoholic beverage or whatnot.

17             Have you ever been arrested, or cited, or

18   detained in connection with accusations that you were

19   under the influence of alcohol while operating a motor

20   vehicle?

21        A.   That's an interesting question, because I

22   was -- I wasn't -- I wasn't arrested for it.   It was --

23   I have a conviction for it, and I took an Alford plea to

24   it, but the way -- the way that it went -- just the way

25   that it proceeded, I -- I wasn't -- I wasn't arrested

Diop Kamau v. Gregory Slate

January 16, 2023                                                    Gregory Slate

47

1    for it, as I -- as I recall.

2        Q.   Was there, perhaps, a driving infraction that

3    resulted in you being sort of pulled over by the police

4    initially?

5        A.   No.  No.  If we're talking about getting

6    pulled over by the police, I've been pulled over by the

7    police many times.

8        Q.   But you have been convicted of driving under

9    the influence of alcohol; is that correct?

10       A.   I entered an Alford plea to driving under the

11   influence.  Correct.

12       Q.   Okay.  And so, did that only happen one time,

13   as far as there was one incident that eventually

14   resulted in this Alford plea that you're referring to?

15            Was there any other time that there was an

16   incident such as that, where you were accused of

17   operating a motor vehicle while under the influence of

18   alcohol?

19       A.   Other than that instance, there's -- that's

20   the only charge that I've ever been aware of that I've

21   had the instance where I entered an Alford plea.

22       Q.   Okay.  Have there been any other incidents

23   where you were accused of operating a motor vehicle

24   while impaired in any way, other than this time where

25   there was the Alford plea?

Diop Kamau v. Gregory Slate

January 16, 2023                                                    Gregory Slate

48

```
 1        A.   Where I was charged?

 2             I mean, in my experience, when you get pulled

 3   over, one of the questions that they always ask you is,

 4   "Do you have any -- are there any weapons in the car?

 5   Are you under the influence of anything?"  You know,

 6   that's a pretty standard question whenever I've --

 7   anywhere I've ever been where I've been pulled over.

 8             I've only ever been charged with one offense

 9   related to driving under the influence of anything, and

10   I entered an Alford plea to that charge.

11        Q.   I understand.  Thank you.

12             How many citations have you received in

13   connection with a driving offense or an offense that

14   occurred while you were operating a motor vehicle?

15        A.   Let's figure this one out.  An offense that

16   occurred while I was -- an alleged offense that occurred

17   while I was operating a motor vehicle or a -- or being

18   charged with something related to the operation of a

19   motor vehicle?

20        Q.   Actually, I'm sorry.  Can we just strike that

21   question?  Can we just go back to the -- the incident

22   that eventually resulted in you entering the plea that

23   you referred to a few moments ago?  Is that okay?

24        A.   Sure.

25        Q.   What year was that incident?
```

Diop Kamau v. Gregory Slate

January 16, 2023                                          Gregory Slate

49

1      A.   The incident giving rise to the charge would
2 have been in 2009.
3      Q.   And do you recall what year you entered that
4 plea?
5      A.   2010.
6      Q.   Got it.  And was a sentence imposed in 2010 in
7 connection with that plea or after you entered that
8 plea?
9      A.   With that particular plea, I couldn't tell
10 ya'.  I mean, obviously, there was a sentence.  They
11 didn't say, "Oh, okay.  Go about your way."  I'm sure
12 there was a sentence imposed.
13      Q.   Do you recall if there was a sentence that
14 required you to serve jail time in connection with that
15 plea?
16      A.   With that, I don't -- with that plea to that
17 charge, I don't know.
18      Q.   Do you recall if there was a fine that was
19 imposed?
20      A.   I'm pretty sure there was a fine or at least
21 some fees.  There was some money to be paid.
22      Q.   Got it.  And that incident that resulted in
23 that plea, did you disclose that in your bar
24 application?
25      A.   Yes.

Diop Kamau v. Gregory Slate

January 16, 2023                                          Gregory Slate

50

1        Q.    Okay.

2        A.    Well, in terms of disclosure, again, I wrote

3   the case number down, and identified the court, and the

4   charge, and the outcome, and I answered any other

5   questions that they asked about criminal matters on any

6   bar exam or any character and fitness application that I

7   ever completed, whether Maryland or anywhere else.  And

8   if they asked me to attach any documents about it, I

9   attached the documents.

10           Whether or not that constitutes disclosure in

11  anybody's mind or sufficient disclosure is an entirely

12  different question.

13       Q.    Okay.  Aside from the situation that resulted

14  in your entering the plea that you've just referenced,

15  and aside from any misdemeanor traffic violations that

16  you may have received, and aside from any parking

17  tickets that you may have received, have you ever been

18  convicted of any misdemeanors or felonies other than

19  what I just mentioned?

20       A.    Excluding misdemeanor traffic violations?  Is

21  that the question?

22       Q.    Yes.

23       A.    Okay.  I've never been convicted of a felony,

24  and my understanding is as to un -- non-traffic-related

25  misdemeanors, I have, excluding anything arising from

Diop Kamau v. Gregory Slate

January 16, 2023                                      Gregory Slate

51

1   the incident with respect to that DUI, one other

2   conviction -- misdemeanor conviction.

3       Q.   And what year was that conviction entered?

4       A.   I couldn't say when.  I don't remember the

5   year that it would have been entered.  I think that the

6   incident that gave rise to it was around 2001.  It was

7   very lengthy -- a very lengthy trial period, and as far

8   as I know, it's still on appeal.  So...

9       Q.   And the incident occurred in 2001?

10      A.   That's my recollection.  Again, when we go

11  back more than 20 years, I just -- that's the best that

12  I can recall.

13      Q.   Okay.  And what -- what was the nature of the

14  incident in 2001?

15      A.   I believe -- let's see.  Do you want the facts

16  as they assert them?

17           Which I don't actually think they're in

18  dispute.

19           You want my recollection of the facts as the

20  police officer asserted?

21      Q.   I don't care what the police officers thought,

22  or asserted, or anything.  I just want your version of

23  what happened that resulted in this misdemeanor.

24      A.   My version of what happened, I was parked at a

25  rest area.  And after being there from -- I think I laid

Diop Kamau v. Gregory Slate

January 16, 2023                                          Gregory Slate

52

1    down just to rest.  And a police officer or some type of

2    law enforcement officer, I don't know if it was a

3    trooper or whatever it was, approached my car and

4    started asking me questions.

5           I answered the first few of those questions,

6    but then, they went into -- he started to repeat

7    himself, and I recognized that the questions that he was

8    asking me were trying to -- he was, in my opinion,

9    probing for probable cause to do a search, trying to put

10   me on like a drug trafficking thoroughfare or something.

11          And then, at that point, I said that I wanted

12   to talk to my lawyer.  I either had already given him my

13   driver's license, or when he asked for my driver's

14   license I gave it to him.  And after I asked for a

15   lawyer, he then circled back, and then, started asking

16   me biographical questions, and I just continued to say

17   that I wanted to talk to a lawyer.  And then, he

18   arrested me for resisting arrest without violence.

19       Q.   Okay.  And that eventually resulted in a

20   misdemeanor conviction?

21       A.   That's my recollection.  I don't know if that

22   is -- I don't -- it was -- I don't understand their

23   system down there that much.  I don't know if -- if the

24   conviction is stayed, or I'm in appeal, or -- I don't

25   know.  So I don't know.  That's what I understand.  I

Diop Kamau v. Gregory Slate

January 16, 2023                                    Gregory Slate

214

1   her house.  So it's not something that -- I know that
2   they like limited to who used it, but -- to just the
3   people that lived in that building.
4       Q.   And how did you become aware of that fact?
5       A.   I think that her boyfriend had consulted with
6   me about some business matters that he had relative to
7   his -- relative to his Internet venture.  And I remember
8   her, when they were breaking up, like complaining about
9   him having his equipment there, or something around
10  that, and I just remember generally that it was a thing.
11      Q.   And what was this -- her ex-boyfriend, what
12  was his name?
13      A.   Wren.  I don't know that I ever knew his last
14  name.
15      Q.   Okay.  And were you ever sort of romantically
16  involved with Ms. Barger?
17      A.   I wouldn't -- I mean, I wouldn't say that we
18  were -- that we dated, but -- I wouldn't say that.
19      Q.   Okay.  But, I mean, is it possible you may
20  have been romantically involved with her at some point
21  in time?
22      A.   I mean, what exactly are you asking me?
23      Q.   You know, have you ever guys ever had, you
24  know, romantic sort of physical contact or that sort of
25  thing, right?

Diop Kamau v. Gregory Slate

January 16, 2023                                              Gregory Slate

215

1          A.   You're asking me if I've had sex with her?   Is
2   that the question?
3          Q.   That's included in what I would consider sort
4   of romantic physical contact, yes.
5          A.   I have no idea how that could possibly be
6   relevant to this litigation, but I have had sex with
7   her, yes.
8          Q.   Was that at her home, or somewhere else, or --
9          A.   Where we had sex?
10          Q.   Well, I'm not necessarily just concerned about
11   that.   Again, I'm not trying to pry into your personal
12   life, Mr. Slate, you know what I mean?   I'm just trying
13   to do my job, right?   You know what I mean?   Obviously,
14   there's a lot of different sort of aspects to this case
15   or whatever.   So I'm just trying to, you know -- yeah,
16   I'm not trying to make you uncomfortable or anything.   I
17   mean, that's not my intent.   Obviously, this is -- I'm
18   just trying to do my job.
19          So I -- you know, your testimony is your
20   testimony.   I'm just asking, have you ever been in her
21   home?   How about that?
22          A.   I've been in her home.
23          Q.   Okay.   At any time when you were in her home
24   did you have the opportunity to utilize a Wi-Fi network
25   that she had maybe setup in that home or had setup in

Diop Kamau v. Gregory Slate

January 16, 2023                                        Gregory Slate

216

1    her home at that time?

2        A.   Not that I recall.

3        Q.   Okay.  Does the name Jonathan Frye ring a

4    bell?

5        A.   No.

6        Q.   You've never -- have you ever purchased

7    anything from a company called The Spy Source?

8        A.   Proba- -- I mean, it sounds like a place that

9    I would have bought something from, but are you going to

10   tell me where it is, or what it is, or tell me what you

11   think I bought?  I don't know.

12       Q.   As far as with Mr. Johnson, was there ever a

13   situation where you, whether it was with permission or

14   without permission, utilized a credit card in Jonathan

15   Johnson's name?

16       A.   To do what?  I don't --

17       Q.   To utilize -- like, for example, when I was a

18   kid, I used my mom's credit card, right?

19            So have you ever -- as far as Jonathan

20   Johnson's credit card, had you ever utilized that for

21   anything ever?

22       A.   I wouldn't know if I -- I mean, not that I

23   recall.

24       Q.   Okay.  Regarding the -- regarding an Internet

25   address diopkamau.com, have you ever heard of that